1  MARK B. HANSON, ESQ.
   Second Floor, Macaranas Building
2  PMB 738 P.O. Box 10,000
   Saipan, Mariana Islands 96950
3  Telephone:    (670) 233-8600
   Facsimile:     (670) 233-5262
4  E-mail:         mark@saipanlaw.com

5  Attorney for *Defendants*

6                    **IN THE UNITED STATES DISTRICT COURT**
                     **FOR THE NORTHERN MARIANA ISLANDS**
7

8  KAMALA BADE MESIK,                          ) CASE NO. CV 07-0019
                                               )
9                            Plaintiff,        )
              vs.                              )
10                                             )        DECLARATION OF COUNSEL
   DKK INC. and KIM HONG KYUN,                 )
11                                             )
                             Defendants.       )
12                                             ) Date:  Thursday, January 3, 2008
                                               ) Time:  9:30 a.m.
13                                             ) Judge: Hon. Alex R. Munson

14        I, Mark B. Hanson, do hereby declare as follows:

15        1.  I am competent to testify, and if called to testify, I would do so in accord herewith.

16        2.  I am the attorney for DKK, Inc. and Kim Hong Kyun with regard to this particular

17  matter.

18        3.  On July 27, 2007, on behalf of DKK, Inc. and Kim Hong Kyun, I contacted Danilo

19  Aguilar, the attorney for the plaintiff in this matter, to discuss with Mr. Aguilar the case,

20  generally.  In that discussion, I first raised the issue that neither DKK, Inc. nor Kim Hong

21  Kyun had been served with a summons and a copy of the Complaint as required by the Federal

22  Rules of Civil Procedure.

23        4.  Mr. Aguilar admitted that the service on Kim Hong Kyun was no good, but he stated

24  that whomever was served with the summons for DKK, Inc. "said that he was a supervisor."

25        5.  I was my information at that time that DKK, Inc. and Kim Hong Kyun received

26  notice of the pendency of the case through a poker attendant named Adonis Munez who was

27  (and still is) a poker room attendant for a company named MKK, Inc.

28

6. Before my first conversation with Mr. Aguilar, I had also obtained and reviewed Mr. Aguilar's July 18, 2007 Declaration of Counsel in Support of Request for Entry of Default and the Clerk of Court's July 24, 2007 Entry of Default as to All Defendants.

7. In that August 27, 2007 discussion with Mr. Aguilar, we agreed that Mr. Aguilar would meet with his client, develop a settlement demand, and write me a settlement demand letter that I could present to my clients. It was my understanding from the conversation that Mr. Aguilar was going to do this as soon as practicable. It was also my understanding from the conversation that Mr. Aguilar was not going to move for a default judgment notwithstanding that he had obtained an entry of default "as to all defendants" and that the issue of the entry of default would be dealt with at a later date.

8. Subsequent to my conversation with Mr. Aguilar, I obtained from the Court's files a return of service of a summons for DKK, Inc. purportedly served on May 25, 2007 by a process server named Javier M. Atalig Jr. *See* Summons attached hereto as Exhibit "A."

9. I also obtained from the Court's files a return of service of a summons for Kim Hong Kyun purportedly served on May 30, 2007 also by Javier M. Atalig Jr. *See* Summons attached hereto as Exhibit "B."

10. Both summons confirmed DKK, Inc.'s and Kim Hong Kyun's position that they were not properly served, *i.e.*, that DKK, Inc. was purportedly served though an individual named Jin Guang Ri and that Kim Hong Kyun was purportedly served through an individual named Adonis Munez.

11. Having not heard from Mr. Aguilar, I sent him a follow up e-mail on August 3, 2007 and another follow up e-mail again on August 9, 2007.

12. In response to my e-mails, on August 9, 2007 Mr. Aguilar stated that he had not had an opportunity to meet with the plaintiff to discuss a proposal, but that he hoped to send me something by the following week.

13. Thereafter, on several occasions when I would see Mr. Aguilar at the

Commonwealth courts, I would ask him about the status of the forthcoming demand letter from the plaintiff.  Each time, Mr. Aguilar assured me that it was still forthcoming.

14.  On September 9, 2007, I called Mr. Aguilar to follow up on the status of the matter.

15.  On October 23, 2007, I again called Mr. Aguilar to follow up on the status of the matter.

16.  Finally, on November 5, 2007, Mr. Aguilar sent me a letter with a demand therein, *inter alia*, to settle this matter for a sum certain.

17.  After reviewing plaintiff's demand extensively with my clients, on November 14, 2007, on behalf of DKK, Inc. and Kim Hong Kyun, I sent a letter in response to plaintiff's November 5, 2007 demand letter.  Therein, the demand was rejected and a counter-offer was made.  I indicated in the letter that if the counter-offer was unacceptable, plaintiff should seek to vacate the entry of default she obtained and re-serve both defendants, setting forth in the counter-offer letter the facts of the defective service as I then understood them.

18.  In the November 14, 2007 letter, I set a deadline of Friday, November 30, 2007 for plaintiff's acceptance or rejection of the counter-offer and, if rejected, for the reversal of the entry of default and the re-service of the defendants.  I made it clear in the letter that if neither action occurred on or before November 30, 2007, defendants would bring all appropriate motions, including a motion for costs and attorney's fees for having to so move.

19.  Even after my receipt of plaintiff's November 5, 2007 demand letter, I did not have cause to suspect that plaintiff would proceed with a motion for a default judgment.  Because of the defective service, defendants were not yet part of the matter, and no motion was necessary given that the parties were working towards a non-litigious resolution of the matter.

20.  To keep myself informed, I regularly check the court's on-line calendar which appeared to be down for a number of days in mid-November 2007, or at least I was unable to access the site during that period.  However, on November 21, 2007, the system was up and

1  running and reflected that a hearing was held on the morning of November 19, 2007 on

2  plaintiff's motion for a default judgment.

3      21.  That is the first I had heard of any default proceedings since the entry of default

4  obtained by plaintiff on July 24, 2007.

5      22.  I immediately downloaded from PACER all of the relevant documents and

6  reviewed what had transpired beginning November 14, 2007, the same day I sent the counter-

7  offer letter on behalf of DKK, Inc. and Kim Hong Kyun.

8      23.  It was only then that I became aware of what had actually transpired and that Mr.

9  Aguilar was representing to the Court that he had not heard from the defendants in months.

10     24.  It was also at that time that I realized that a motion would be necessary prior to

11  the November 30, 2007 deadline DKK, Inc. and Kim Hong Kyun had set in the counter-offer

12  to plaintiff's November 5, 2007 demand letter.

13     25.  I was not informed and, accordingly, not present at the November 19, 2007 hearing

14  on plaintiff's motion for a default judgment, so my knowledge of what transpired orally therein

15  is limited to the court's minute order and subsequent written order thereafter. However, my

16  review of the records available from PACER indicates that neither plaintiff nor her counsel

17  have yet informed the Court of the issues defendants have raised with regard to defective

18  service of the summons on DKK, Inc. and Kim Hong Kyun.

19     I swear under the penalty of perjury that the forgoing is true and correct and that this

20  Declaration was executed this 27th day of November, 2007 in Saipan, Commonwealth of the

21  Northern Mariana Islands.

22

23

24                                      /s/ Mark B. Hanson

25                                      _____
                                        MARK B. HANSON

26                                      Attorney for *Defendants*

27

28