DANILO T. AGUILAR, F0198
Attorney at Law
P.O. Box 505301
First Floor, San Jose Court Building
Cor. Ghiyeghi St. & Wischira Way
San Jose, Saipan, MP 96950
TELEPHONE: (670) 234-8801
FAX: (670) 234-1251

Attorney for Plaintiff
      Kamala Bade Mesik

IN THE UNITED STATES DISTRICT COURT

OF THE

NORTHERN MARIANA ISLANDS

| | |
|---|---|
| KAMALA BADE MESIK, | CIVIL ACTION NO. 07-0019 |
| Plaintiff | |
| v. | **DECLARATION OF DANILO T. AGUILAR IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS.** |
| DKK INC. AND KIM HONG KYUN | |
| Defendants | |

I, Danilo T. Aguilar, declare as follows:

1. Unless otherwise stated, I have personal knowledge of each of the facts set forth below;

2. I am counsel of record for Plaintiff Kamala Bade Mesik in the above entitled matter;

3. On or about May 25, 2007, I filed a complaint with the U.S. District on behalf of the Plaintiff seeking payment of my client's unpaid overtime wages under the Fair Labor Standards Act;

1      4.     After filing the complaint and summons, I requested Javier Atalig, Jr. to find and serve the Defendants with copies of the complaint and the summons;

     5.     On or about May 25, 2007, Mr. Atalig reported to me that he completed service upon Defendant DKK, Inc. by giving a copy of the complaint and summons to a Mr. Jin Guang Ri;

     6.     I further questioned Mr. Atalig about who Mr. Jin Guang Ri was and the circumstances of how Mr. Ri was identified as an authorized agent or a managing agent for DKK, Inc.

     7.     Based upon the statements of Mr. Atalig, I believed that Mr. Ri was a managing agent for DKK, Inc., but I wanted to confirm that service was properly made and I asked Mr. Atalig to re-serve the summons and complaint again to DKK, Inc.;

     8.     I instructed Mr. Atalig to make further inquiries about the person who was being served and to ensure that person was a managing agent for DKK, Inc.;

     9.     At some point, although I cannot recall the exact date, Mr. Atalig told me that he had served a second set of the summons and complaint to a "night manager" at the DKK, Inc. poker room;

     10.     On or about the first week of June 2007, I received a letter dated June 2, 2007 from DKK, Inc., signed by Kim, Hong Kyun, its manager, referencing the civil case number for the U.S. District Court matter. The letter attempts to provide an explanation regarding the claims of DKK, Inc. A true and

correct copy of the Letter from Kim, Hong Kyun, dated June 2, 2007 is attached to this Declaration as Exhibit "1";

11.  After I reviewed the letter, any doubts that I previously had about defects in service of process for Defendant DKK, Inc. were erased because it appeared from the letter of Mr. Kim that service was in fact accomplished.  I wrote a letter dated June 7, 2007, to Mr. Kim advising him to retain an attorney and to file an answer with the U.S. District Court.  A true and correct copy of my Letter dated June 7, 2007 is attached as Exhibit "2";

12.  After waiting for a period of several weeks, I believed that DKK, Inc. was not going to answer the complaint and I then filed a request for an entry of default with the District Court.  An entry of default was subsequently entered on July 24, 2007;

13.  No one from DKK, Inc. made any contact with me until August 2007 and it was about two to three weeks after the entry of default that I first talked to Mark Hanson, who advised me that he was representing DKK, Inc.;

14.  After a 10 to 15 minute conversation with Mr. Hanson and after I simultaneously reviewed my file, I agreed with Mr. Hanson that service upon Mr. Kim, Hong Kyun was not proper, but I also told him that I believed that service was properly made on DKK, Inc. because the complaint and summons were served on "managing agents";

15.  I also agreed with Mr. Hanson that settlement of my client's claims were in the interests of both parties and I agreed that I would not move for a default judgment unless we were unable to settle my client's claims;

16. I had one or two other telephone conversation with Mr. Hanson after the initial discussion and I informed him that I was experiencing some difficulty meeting with my client to discuss possible settlement terms;

17. On or about mid-October 2007, I was contacted by Mr. Randy Schmidt, a law clerk from the U.S. District Court inquiring whether I was going to request for a default judgment. I told Mr. Schmidt that I was attempting to settle the matter with Mr. Hanson and hopefully there would be no need for a default judgment hearing;

18. On or about November 2, 2007, I sent Mr. Hanson a settlement letter that was approved by my client outlining her terms of settlement;

19. On or about November 14, 2007, I was again contacted by Randy Schmidt who told me that the court wanted to close the matter as soon as possible since a default has been pending for several months;

20. On that same day, I sent a letter to Mr. Hanson asking if his client had a position about the settlement offer and I also told him that I was contacted by the U.S. District Court to keep this matter moving. In that same letter, I told Mr. Hanson that I would be filing a request for a default judgment hearing and would try to schedule it on December 13, 2007. A true and correct copy of my letter dated November 14, 2007 is attached as Exhibit "3";

21. On or about November 14, 2007, I received a response letter from Mr. Hanson regarding my settlement offer;

22. I sent a response letter to Mr. Hanson on that same day regarding his letter and in my response letter, I again told him of my intent to seek a default judgment hearing and to have it scheduled on December 13, 2007. A

4

copy of my letter, redacting references to settlement negotiations, dated November 14, 2007 is attached as Exhibit "4";

23.  On or about November 14, 2007, I filed my motion requesting for a default judgment hearing via the District Court "e-filing" system.  I thought and I believed that Mr. Hanson would receive electronic service of my motion, but I later learned that Mr. Hanson was not the electronic service list because he did not file a formal notice of appearance in the matter;

24.  I was contacted by Randy Schmidt from the District Court about scheduling the default judgment hearing and I was advised that the court had a number of dates in mind that were before December 13, 2007.  Based upon my off-island travel schedule and the court's availability, it appeared that the only available date for the hearing was on November 19, 2007;

25.  During my discussion with Randy Schmidt, I advised him about Mr. Hanson's representation of the Defendants and the scheduling of the hearing and I was told that Mr. Hanson had not made his appearance in the matter, thus obviating the need for service of the notice of hearing;

26.  On or about November 19, 2007, I appeared at the default hearing without my client and I advised the court that I was unable to go forward with the default hearing because my client was sick with the "pink eye" and also had the "flu".  The court told me to contact the clerk's office for a new date of the hearing when we were ready to proceed.

27.  Prior to the recess, I again informed the court that Mr. Hanson was representing the Defendants and I told the court, for the record, my concerns

of being accused of acting unethically by Mr. Hanson, since he was not served with notice of the hearing;

28. I was advised by the court that the issue of Mr. Hanson's appearance were not properly before the court;

29. Although I initially filed a declaration that I was not contacted by any of the Defendants, I cured any possible misrepresentation to the court about Mr. Hanson's representation of the Defendants during my discussions with Randy Schmidt and in open court on November 19, 2007;

30. The record of the proceedings on November 19, 2007 clearly show that I informed the court in good faith of Mr. Hanson's representation of the Defendants;

31. Although I did not anticipate the early scheduling of the default judgment hearing so close to the date of filing, I informed Mr. Hanson of my intent to request for a default judgment hearing on at least two prior letters I sent to his office. *See* Exhibits 3 and 4.

I declare under penalty of perjury under the laws of the United States and the laws of the Commonwealth of the Northern Mariana Islands that the foregoing is true and correct, and that I executed this Declaration on this 21st day of December, 2007.

                                                                            /s/ *Danilo T. Aguilar*
**DANILO T. AGUILAR, ESQ.**
Declarant